IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **JAYNE BOSNICH,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05 C 5071 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **JO ANNE B. BARNHART,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jayne Bosnich, seeks judicial review of the final decision of Defendant,

Jo Anne B. Barnhart, Commissioner of Social Security Administration ("Commissioner"), who

determined that Plaintiff was overpaid $23,269.00 in Disability Insurance Benefits ("DIB") and

denied Plaintiff's request for a waiver of recovery of the overpayment under sections 216 and 223

of the Social Security Act, 42 U.S.C. §§ 416 and 423. Before this Court is Plaintiff's Motion for

Summary Judgment, which requests this Court to reverse the Commissioner's decision or remand

Plaintiff's case for a further determination of whether Plaintiff was at fault in causing the

overpayment. The Commissioner's Motion for Summary Judgment, which requests this Court to

affirm her decision, is also before the Court. The parties have consented to have this Court

conduct any and all proceedings in this case, including the entry of final judgment. *See* 28

U.S.C. § 636(c); Local R. 73.1(a). For the reasons set forth below, the Commissioner's final

decision is affirmed in part, reversed in part, and remanded for further proceedings in accordance

with sentence four of 42 U.S.C. § 405(g).

# I.  Background

## A.    Work History and Procedural Background

Due to mental impairments, including chronic depression and panic attacks, Plaintiff filed for disability benefits on January 21, 1992, pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et. seq. (R. at 22-26.) The Commissioner found Plaintiff to be disabled and granted her DIB. (R. at 26.)

After being found disabled and entitled to DIB, Plaintiff returned to work in February 1992, thereby beginning her trial work period ("TWP"). A TWP is a period of nine months (which need not be consecutive) during which a DIB recipient may test his ability to work in spite of health problems. 42 U.S.C. § 422(c); 20 C.F.R. § 404.1592. In calendar years 1990 to 2000, a trial work month was any month where the recipient earned more than $200.00 in gross wages. 20 C.F.R. § 404.1592 (Table 1). Plaintiff spent five months working for two temporary employment agencies between February 1992 and June 1992. (R. at 113-16.) Beginning in April 1993, Plaintiff worked as a file clerk at the University of Chicago Hospital. (R. at 73-74, 143.) Plaintiff earned more than $200.00 in gross wages in each month from February 1992 through June 1992 and from April 1993 through July 1993, (R. at 72-116), thereby completing her nine-month TWP in July 1993. (R. at 122.)

Having completed her TWP, Plaintiff began a thirty-six-month extended period of eligibility ("EPE"). During the thirty-six-month EPE, DIB recipients receive benefits so long as their work does not constitute substantial gainful activity ("SGA")[1] and their health problems still

---

[1] According to the Commissioner's regulations, SGA is work activity that is both substantial and gainful. 20 C.F.R. § 404.1572. The Commissioner defines substantial as involving significant physical or mental activity and gainful as activity done for profit. Id.

meet Social Security Administration ("SSA") guidelines. 42 U.S.C. § 423(e)(1). If a recipient's work activity shows an ability to engage in SGA, disability payments will cease. Id. In Plaintiff's case, her EPE began in August 1993 and expired at the end of July 1996. (R. at 72-116.) In February 1997, Plaintiff earned $1,347.50 in gross wages, (R. at 92), far in excess of the $500.00 per month that constituted SGA at that time. *See* SSA Program Operations Manual System (POMS) § DI 10501.015 (Table 2). As a result, Plaintiff's DIB ended (retroactively) in May 1997.[2]

In April 2000, the SSA conducted a continuing disability review of Plaintiff's DIB. (R. at 67.) After considering several factors, including the nature of Plaintiff's work and her salary history, in October 2000, the SSA notified Plaintiff that her disability benefits would likely end due to her performance of SGA and receipt of excessive earnings.[3] (R. at 119-21.) On November 10, 2000, the SSA notified Plaintiff that she was not entitled to DIB as of May 1997 based on her performance of SGA and receipt of excessive earnings in February 1997. (R. at 130-33.) The SSA further explained that Plaintiff's receipt of payments from May 1997 through November 2000 resulted in an overpayment of $43,380.70. (Id.)

On November 30, 2000, Plaintiff, with the assistance of her attorney, requested that the SSA reconsider its determination that her disability had ended as of May 1997, arguing that her clerical work at the University of Chicago Hospital did not constitute SGA and therefore could not have resulted in an overpayment at any time. (R. at 134-36.) In the alternative, Plaintiff

---

[2] The SSA will pay benefits for the month disability ends and the following two months regardless of the amount earned. 42 U.S.C. § 423(a)(1)(E).

[3] Plaintiff's earnings exceeded SGA limits several times in 1997 and 1998. (R. at 123.)

argued that, even if her DIB eligibility had ended, the SSA should waive recovery of any overpayment because she was without fault for the overpayment due to her mental disability. (Id.) In March 2001, Plaintiff, through her attorney, requested that she remain in pay status pending the reconsideration of her disability cessation and overpayment decision. (R. at 137.) Ultimately, the Commissioner granted Plaintiff's request and (1) waived collection of Plaintiff's first overpayment of $43,380.70, (R. at 139), and (2) kept Plaintiff in pay status while the SSA reconsidered her entitlement to DIB.

On August 27, 2002, the Commissioner issued her reconsideration decision affirming her initial determination that Plaintiff's disability had in fact ended as of May 1997. (R. at 144-46.) The Commissioner informed Plaintiff that from April 2001 through August 2002, she had been overpaid a second time in the amount of $23,269.00. (R. at 148-54.) Plaintiff does not dispute her receipt of benefits in the amount of $23,269.00 between April 2001 and August 2002.

Plaintiff appealed the SSA decision and timely requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 155.) The ALJ found Plaintiff was overpaid a second time and was at fault for causing the overpayment and then rejected Plaintiff's request for waiver of recovery of the second overpayment. (R. at 21.) Plaintiff filed a Request for Review of the ALJ's decision with the SSA's Appeals Council on June 18, 2004. (R. at 236-238.) The Appeals Council denied Plaintiff's request for review on July 11, 2005, making the ALJ's decision the Commissioner's final decision. (R. at 5-8.)

**B.    Administrative Proceedings and Testimony**

Following a November 14, 2003 pre-trial conference, a hearing was held before an ALJ on February 24, 2004. (R. at 246, 268.)  Plaintiff appeared in person, represented by her attorney David A. Bryant. (R. at 270.)  Plaintiff testified that she decided to work after she was awarded DIB because of a telephone conversation with a SSA representative that left Plaintiff under the impression that she needed to work in order to maintain benefits. (R. at 280, 292, 294.)  Plaintiff claims she did not know about SGA limits or the maximum amount per month she could earn and still maintain DIB eligibility. (R. at 294, 296, 300.)  Plaintiff testified that the SSA's Notice of Continuing Disability Review, (R. at 67), and Report of Work Activity, (R. at 68-71), from November 2000 looked "familiar." (R. at 305.)

Plaintiff and her husband, Mr. Bosnich, testified that, having met late in life, they maintained no common bank accounts. (R. at 285, 313.)  Mr. Bosnich, an Australian-born professor at the University of Chicago, testified to his lack of familiarity with the Social Security system and disability benefits. (R. at 308.)  Plaintiff and Mr. Bosnich explained that Plaintiff's DIB payments were deposited directly into her personal checking account and were used for groceries and her own personal expenses. (R. at 282-283.)  Both Plaintiff and Mr. Bosnich indicated that Plaintiff never sought her husband's advice or opinion regarding the letters she received from the SSA.  Mr. Bosnich attributes Plaintiff's reluctance to talk about her DIB to Plaintiff's feelings of inadequacy. (R. at 300, 311.)  According to Mr. Bosnich, he only became aware of the SGA earning limits after the SSA sent Plaintiff the first overpayment notice. (R. at 310.)  Mr. Bosnich indicated that he offered to help his wife draft a response to the SSA but she preferred to do it herself. (R. at 312.)

- 5 -

### C.     ALJ Findings

Despite finding the testimony of Plaintiff and Mr. Bosnich consistent and credible, the ALJ found Plaintiff at fault in the creation and receipt of the second overpayment and therefore not entitled to a waiver of recovery. (R. at 19-21.) In a decision dated May 27, 2004, the ALJ found that Plaintiff had been overpaid $23,269.00 for the period from April 2001 through August 2002 due to her participation in SGA after the expiration of both her TWP and EPE. (R. at 21.) Additionally, because Plaintiff testified that the correspondence with the SSA looked "familiar," the ALJ charged Plaintiff with understanding the contents of the SSA notices. (R. at 20.) The ALJ concluded that Plaintiff knew, or should have known upon appropriate inquiry, that continued acceptance of DIB payments would result in a second overpayment. (Id.)

## II.     Discussion

### A.     Standard of Review

The Commissioner's decision denying a request for a waiver of recovery must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g). *See also Banuelos v. Apfel*, 165 F.3d 1166, 1169 (7th Cir. 1999), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562 (7th Cir. 1999). Evidence is considered substantial if a reasonable person would accept it as adequate to support the Commissioner's conclusion. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). A reviewing court may not "reevaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the SSA." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**B.     Legal Standard for Waiving Recovery of an Overpayment**

A DIB overpayment occurs where a recipient receives more than the correct payment she is due and is obligated to refund the excess amounts. 42 U.S.C. § 404(a); 20 C.F.R. §§ 404.501-.502. An overpayment may result when a recipient requests continued payment of DIB during an appeal of the SSA's determination that she was no longer entitled to benefits. 42 U.S.C. § 423(g)(2)(A). The SSA must seek a refund from a person to whom it has mistakenly made an overpayment of disability benefits. 42 U.S.C. § 404(a).

The SSA may waive the recovery of an overpayment if (1) the recipient is without fault and (2) recovery either defeats the purpose of the Social Security Act or is against equity and good conscience. *Banuelos*, 165 F.3d at 1173; *Pliley v. Sullivan*, 892 F.2d 35, 39 (6th Cir. 1989); 42 U.S.C. § 404(b). The recipient has the burden of proving entitlement to waiver of repayment. *Banuelos*, 165 F.3d at 1170. That the SSA may be at fault in making the overpayment does not absolve the recipient of liability if the recipient is not without fault. *See* 20 C.F.R. § 404.507.

A recipient is not without fault where the overpayment resulted from (1) an incorrect statement made by the recipient which he knew or should have known to be false, (2) failure to furnish information which the recipient knew or should have known to be material, or (3) with respect to the overpaid recipient only, acceptance of a payment which he either knew or could have been expected to know was incorrect. *Id.* When determining whether a recipient is without fault in causing the overpayment of benefits, the SSA must specifically take into account any physical, mental, educational, or linguistic limitation such individual may have, including any lack of facility with the English language. 42 U.S.C. § 404(b); 20 C.F.R. § 404.507.

According to the SSA's POMS manual, "[a]n individual is expected to exercise a high degree of care in preventing overpayments." SSA POMS § GN 02250.005.B2. However, the high degree of care expected of an individual may vary with the complexity of the circumstances giving rise to the overpayment and the capacity of the particular recipient to realize that he is being overpaid. 20 C.F.R. § 404.511. An overpaid individual can be found to be without fault for the overpayment if he appealed the cessation determination in good faith. 42 U.S.C. § 423(g)(2)(B); SSA POMS § GN 02250.036. Again, the Commissioner shall specifically consider any physical, mental, educational, or linguistic limitation that may affect the person's ability to act in good faith. 42 U.S.C. § 423(g)(2)(B);

### C. Analysis

Plaintiff attacks the Commissioner's final decision and argues that (1) the ALJ improperly found Plaintiff's clerical work to constitute SGA, (2) even if her work constituted SGA and she was overpaid, the ALJ improperly held her to be at fault for causing the overpayment from April 2001 to August 2002, and (3) the ALJ should have granted her request for a waiver based on equity and good conscience. The Commissioner rejects these arguments and argues that the ALJ reached the proper conclusion.

### 1. The Commissioner's finding that Plaintiff's work constituted SGA is supported by substantial evidence.

Plaintiff asserts that the ALJ improperly determined that her disability had ended in February 1997 because he erroneously found her clerical work at the University of Chicago

Hospital to constitute SGA. Plaintiff maintains her work at the hospital was under special accommodation and does not show her ability to perform SGA. *See* 20 C.F.R. § 404.1573(c). Specifically, Plaintiff insists that she worked in a "sheltered or special environment" because she performed repetitive, tedious tasks at her own pace and was allowed to set her own schedule. *See* 20 C.F.R. § 404.1574(a)(3). As evidence of this accommodation, Plaintiff points out that she currently works two days per week and takes breaks as needed. In addition to her accommodation argument, Plaintiff claims that the ALJ committed legal error by failing to consider the opinion of a Certified Rehabilitation Counselor who described Plaintiff's work as "contingent and marginal." (R. at 180.) Finally, Plaintiff argues that her work between April 2001 and August 2002 could not constitute SGA because during those months she made less than the $500.00 guideline maximum.

As an initial matter, the ALJ properly found that Plaintiff's disability ended in February 1997. Plaintiff earned $1,347.50 in gross wages in February 1997, far in excess of the $500.00 guideline maximum. Because Plaintiff's TWP and EPE had both ended as of August 1996, her performance of SGA in February 1997 meant that her disability ended that month and as of May 1997 she was no longer entitled to benefits. The fact that Plaintiff may currently be eligible for DIB has no bearing on whether her prior earnings rendered her ineligible for benefits in 2001 and 2002. *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) (Social security claimant's current eligibility had no bearing on whether prior substantial earnings rendered him ineligible for benefits.) Plaintiff was not entitled to DIB as of May 1997, and any payments she received thereafter constituted overpayments.

Next, the ALJ appropriately considered the nature of Plaintiff's work and her earnings when he rejected Plaintiff's special accommodation argument. In this case, the ALJ did not need to rely on the opinion of the Certified Rehabilitation Counselor because Plaintiff's substantial earnings, regardless of whether the work she performed was sheltered or unsheltered, demonstrated that Plaintiff engaged in SGA. 20 C.F.R. § 404.1574(a)(1) (earnings from work you have done may show that you have engaged in SGA *regardless of whether it is unsheltered or sheltered work*). Furthermore, the evidence does not show that Plaintiff worked under any special accommodation. On the contrary, the evidence shows Plaintiff's ability to succeed at a competitive job in the workplace—a job that was not created especially for Plaintiff—and her ability to perform work that others were reluctant to do. That Plaintiff had a flexible schedule does not suggest otherwise, as this is a benefit common in the modern workplace. It follows that Plaintiff's allegation that the ALJ committed legal error by ignoring lines of evidence is without merit.

Because of the factors discussed above, the ALJ's findings that Plaintiff's disability ended in February 1997, and that a second overpayment now exists, are supported by substantial evidence. Thus, the Commissioner did not err in rejecting Plaintiff's allegation that her work did not constitute SGA.

> 2. The Commissioner's finding that Plaintiff was not
> without fault for creating or causing the second
> overpayment is not supported by substantial evidence.

Plaintiff argues that the ALJ failed to consider her mental condition when he found Plaintiff at fault in causing the second overpayment of $23,269.00. The ALJ inferred from

Plaintiff's receipt of, and familiarity with, past SSA notices that Plaintiff understood that she was ineligible for benefits and that receipt of future payments might lead to a second overpayment. The ALJ stated that Plaintiff knew, or should have known upon appropriate inquiry, the consequences of her continued acceptance of DIB.

The Social Security Act is exceedingly complex and detailed and the ALJ cannot arbitrarily assume that a DIB recipient understood its application to her particular situation. *Kendrick v. Califano*, 460 F. Supp. 561, 572 (D.C. Va. 1978). In determining whether an individual is without fault in causing the overpayment of benefits, the ALJ must consider any physical, mental, educational, or linguistic limitations that an individual may have. 42 U.S.C. § 404(b); 20 C.F.R. § 404.507. Here, Plaintiff has been diagnosed with mental disabilities and those mental disabilities are relevant factors that the ALJ should have specifically considered when he made his fault determination. Id. *See also Wilkening v. Barnhart*, 139 Fed. Appx. 715, 719 (7th Cir. 2005) (unpublished). Plaintiff was initially awarded DIB due to her mental condition and exhibits symptoms of poor memory, time or place disorientation, social withdrawal or isolation, mood disturbance, a loss of intellectual ability of 15 IQ points or more when under stress, recurrent panic attacks, feelings of guilt and worthlessness, and difficulty thinking or concentrating. (R. at 220.)

The ALJ did not discuss the effect Plaintiff's mental condition had on her ability to understand the overpayment issues. In his decision, the ALJ found that Plaintiff (1) received notice that paid employment could reduce her SSA benefits and (2) appreciated the significance (and perhaps consequences) of her continued acceptance of those benefits. This was a logical assumption, as Plaintiff requested and received a waiver of overpayment from the SSA in 2001.

Nonetheless, in light of Plaintiff's mental impairments, the ALJ was not permitted to make this assumption and was required to consider whether Plaintiff actually comprehended the SSA notice and information and whether she appealed the disability cessation determination in good faith. *See* 42 U.S.C. § 404(b). By stating that Plaintiff knew, or should have known upon appropriate inquiry, the consequences of her continued acceptance of the overpayment, the ALJ is holding Plaintiff to an ordinary standard. A person with distorted mental perceptions, however, cannot be held to the same standard of care as a person with a physical disability but a healthy mind. *Orsini v. Sullivan*, No. 80-1891 AET, 1990 WL 56412, at *4. Thus, the ALJ was required to consider whether the overpayment resulted because Plaintiff's specific mental condition limited her ability to understand the circumstances surrounding the second overpayment.

As a final matter, the ALJ is unclear as to what would constitute "appropriate inquiry" by Plaintiff in this case. The determination of fault for overpayment is only made as to the overpaid individual. 20 C.F.R. § 404.507(c) (fault inquiry focuses on the individual recipient of the overpayment only). In this case, determining whether the overpaid individual knew about, or should have suspected, a second overpayment requires considering Plaintiff's mental disability. Because the SSA focuses the inquiry on the individual claimant, if the ALJ is suggesting that Plaintiff should have asked her husband or her attorney about the consequences of continuing to work and/or receive DIB, then the ALJ must clarify on what grounds he makes that determination.

Based on the above, the Court must conclude that the ALJ's determination that Plaintiff was not without fault is not supported by substantial evidence in the record. Because the ALJ

failed to give proper consideration to the factors listed in 42 U.S.C. § 404(b) and 20 C.F.R. § 404.507 and because it is feasible that Plaintiff's mental condition may support a finding that she was without fault in causing the overpayment, the Court reverses the ALJ decision that Plaintiff is not without fault in causing the overpayment between April 2001 and August 2002 and remands this case for further proceedings consistent with this opinion.

### 3. The Court does not consider Plaintiff's request for a waiver based on equity and good conscience at this time.

Finally, Plaintiff argues that the ALJ should have granted her request for a waiver based on equity and good conscience. The ALJ found Plaintiff to be at fault in causing the overpayment and therefore did not consider whether Plaintiff met the conditions of waiver set out in 20 C.F.R. § 404.506. Because the ALJ never reached this issue, and because a remand is necessary to determine fault, there is no reason for the Court to rule on this issue at this time.

## III. **Conclusion**

For the foregoing reasons, the Commissioner's motion is granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: July 31, 2006.

Copies have been mailed to:

DAVID A. BRYANT, Esq.
Daley, DeBofsky & Bryant
One North LaSalle Street
Suite 3800
Chicago, IL 60602

Attorney for Plaintiff

SAMUEL D. BROOKS, Esq.
Assistant United States Attorney
219 South Dearborn Street
Suite 500
Chicago, IL 60604

Attorney for Defendant